## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**DALLAS WALTEMIRE,**                        |
                                             |
      **Plaintiff,**                        |
                                             |
**v.**                                       |          **Case No. 13-CV-1283-DDC**
                                             |
**CAROLYN W. COLVIN,**                       |
**Acting Commissioner of Social**            |
**Security Administration,**                 |
                                             |
      **Defendant.**                        |
_____     |

### MEMORANDUM AND ORDER

     Pursuant to 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final decision of the Commissioner of Social Security Administration ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act, as amended.  Plaintiff has filed a brief (Doc. 14) seeking judicial review of the Commissioner's decision.  The Commissioner has filed a brief in opposition (Doc. 19) and submitted the administrative record (Doc. 10) contemporaneously with her Answer (Doc. 9).  Upon the filing of plaintiff's reply brief (Doc. 22), this matter became ripe for determination.  Having reviewed the administrative record and the briefs of the parties, the Court reverses the decision of the Commissioner and remands the case for further proceedings consistent with this order.

### I.  BACKGROUND[1]

     Plaintiff was born in 1970 and completed the 10th Grade of high school through a special education program.[2]  He applied for disability insurance benefits on July 30, 2010, claiming an

---

[1]The background information comes from the certified transcript of the record ("Tr.") provided with the Commissioner's Answer.

[2]*See* Tr. at 31-32.

inability to work due to his disabling condition beginning August 28, 2009.[3]  He identified

numerous medical conditions that limit his ability to work:  (1) dyslexia; (2) diabetes; (3) low

back pain; (4) arthritis; (5) depression; (6) chronic asthma; (7) high blood pressure; (8) sleep

apnea; (9) high cholesterol; (10) knee pain; and (11) bad shoulder.[4]  During the fifteen years

before the alleged onset of disability, he worked as a carpet and floor installer, custodial floor

technician, donation door attendant, and lot attendant.[5]

After the Social Security Administration denied his application initially and on reconsid-

eration,[6] he requested a hearing before an Administrative Law Judge ("ALJ").[7]  On November 8,

2011, the ALJ conducted a hearing at which plaintiff appeared personally and through counsel.[8]

The ALJ also heard testimony from a vocational expert ("VE").[9]  The VE testified that a hypo-

thetical person with limitations described by the ALJ would not be capable of performing any of

plaintiff's former jobs.[10]  But the VE identified two jobs (arcade attendant and parking lot attend-

ant) that existed in significant numbers in the national and local economies that such a hypotheti-

---

[3]Tr. at 137.

[4]Tr. at 157.

[5]Tr. at 159.

[6]Tr. at 75-76.

[7]Tr. at 86.

[8]*See* Tr. at 26-55.

[9]*See* Tr. at 56-59.

[10]Tr. at 57-58 (describing an individual limited to light work with the following additional limitations: (1) postural activities only occasionally; (2) no rope, ladder, or scaffold climbing; (3) must avoid concentrated exposure to respiratory irritants in addition to extreme temperature and humidity; (4) limited to simple, routine tasks with only occasional changes to work setting; (5) no more than superficial contact with others; and (6) no writing).

cal person could perform.[11]  When the ALJ limited the hypothetical person to sedentary work, the VE testified that several jobs exist that such a person could perform, including clerical mailer or addresser and semi-conductor assembler.[12]  The VE also testified that a sit/stand option would not affect the hypothetical person's ability to perform the identified jobs at either exertional level or vary the number of such jobs existing in the national or local economies.[13]  More particularly, the following exchange occurred between the ALJ and the VE:

Q     If the hypothetical individual required a sit/stand option?  Would that have any impact on the jobs you've identified at the light or sedentary levels?

A     No, Your Honor, it would not.  Those are sit/stand options and at the light level, they fit well within the criteria.  The sedentary, those are sit/stand option so there is not an issue.[14]

On November 21, 2011, the ALJ issued a written decision finding plaintiff not disabled.[15] On June 15, 2013, the Appeals Council found no reason to review the ALJ's decision and denied plaintiff's request for review.[16]  Consequently, the ALJ's decision is the final decision of the Commissioner.[17]  Plaintiff appealed the decision to this Court on July 26, 2013.

## II.  MEDICAL HISTORY

The administrative record contains (1) treatment records from Bruce Barclay, M.D., (Exs.

---

[11]Tr. at 58.

[12]*Id.*

[13]Tr. at 59.

[14]*Id.*

[15]Tr. at 12-21.

[16]Tr. at 1.

[17]*Id.*; *Threet v. Barnhart*, 353 F.3d 1185, 1187 (10th Cir. 2003).

1F, 4F, and 10F); (2) state agency consultative examinations by Shawn R. Morrow, D.O., (Ex. 2F) and Gregory B. Smith, Ph.D., (Ex. 3F); (3) medical records from Via Christi Health System (Ex. 9F); (4) two administrative requests for medical advice (Exs. 5F and 7F); and (5) two administrative case analyses following a review of the record on reconsideration (Exs. 6F and 8F). Having reviewed the issues raised in this action and the administrative record, including the listed exhibits, the Court finds no need to recite the medical record with any greater specificity.

### III.  SUMMARY OF ALJ FINDINGS

The ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset of his disability and that he suffers from the following severe impairments:  (1) degenerative disc disease, (2) asthma, (3) knee pain, (4) hypertension, (5) depression, and (6) borderline intellectual functioning.[18]  But the ALJ did not find that plaintiff suffers from an impairment or combination of impairments that meets or medically equals any listed impairment that would qualify him as presumptively disabled without regard to his residual functional capacity ("RFC").[19]

The ALJ then determined that plaintiff has the RFC to perform a range of light work with the following additional limitations:  (1) postural activities only occasionally; (2) no rope, ladder, or scaffold climbing; (3) avoid concentrated exposure to respiratory irritants in addition to temperature extremes and humidity; (4) simple, routine tasks with only occasional changes to work setting; (5) no more than superficial contact with others; (6) no writing; and (7) "requires a sit/stand option and is precluded from overhead reaching with the left, non-dominant upper ex-

---

[18]Tr. at 14.

[19]Tr. at 14-16.

tremity."[20]  The ALJ stated that in making his RFC determination, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p" and he "also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p."[21]  The ALJ also stated that he carefully considered "the entire record."[22]

The ALJ followed a two-step process for considering plaintiff's symptoms.[23]  In doing so, he stated:

> The claimant previously reported difficulties lifting greater than 20 pounds.  He also reported problems squatting, bending, standing, reaching, walking, sitting, kneeling, hearing, climbing stairs, seeing, remembering, completing tasks, concentrating, understanding, following instructions, and using his hands (Exhibit 9E).  Additional evidence suggests the claimant was unable to walk further than the distance between the living room and the bedroom (Exhibit 13E).  At the hearing, the claimant reported limitations to sitting 45 minutes, difficulties standing secondary to balance issues, and an inability to stand longer than 20 feet [sic].[24]  He further testified to lifting only 5-10 pounds.

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

> The claimant's statements concerning his impairments and their impact on his ability to work are not entirely credible in light of the medical history, the reports

---

[20]Tr. at 16.

[21]*Id.*

[22]*Id.*

[23]Tr. at 17.

[24]Plaintiff testified that he "can stand for about 30 minutes" and can walk approximately "20 feet."  Tr. at 34.

of treating and examining practitioners, the degree of medical treatment required and the claimant's own descriptions of his activities and lifestyle.[25]

The ALJ then noted that plaintiff has undergone no invasive treatment for his back or neck problems, no one has recommended such treatment, and plaintiff's activities are consistent with an ability to perform light work as limited by the ALJ's RFC determination.[26]  The ALJ next noted that plaintiff took asthma medications inconsistently and continued to smoke cigarettes, which adversely affected his credibility as it pertains to the severity of his asthma.[27]  The ALJ discounted plaintiff's symptoms of depression because (1) his primary physician had not recommended that plaintiff see a specialist for treatment or medication management; (2) sparse treatment notes about the condition suggested that plaintiff was "not alleging multiple symptoms or significant complications from depression"; and (3) although a consultative examination showed issues with borderline intellectual functioning, plaintiff's activities support finding that he retains the RFC for light work as limited by the ALJ.[28]  Finally, the ALJ listed reported activities that he viewed as consistent with limitations about social functioning, activities of daily living, and maintaining concentration, before discussing consultative examinations and reviews that support limitations equal to or less than those within the RFC determination.[29]

Given the determined RFC and VE testimony, the ALJ found that plaintiff could not per-

---

[25]*Id.*

[26]Tr. at 18.

[27]*Id.*

[28]*Id.*

[29]Tr. at 18-19.

form his past relevant work.[30]  But considering plaintiff's RFC, age, education, and work experience, the ALJ identified jobs existing in significant numbers in the national economy that plaintiff could perform based upon the VE's testimony.[31]  The ALJ thus found plaintiff not disabled.[32]

## IV.  LEGAL STANDARDS

### A.  <u>Standard of Review</u>

Section 405(g) of Title 42 of the United States Code grants federal courts authority to conduct judicial review of final decisions of the Commissioner and "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . with or without remanding the case for a rehearing."  Judicial review of the Commissioner's denial of benefits is limited to whether substantial evidence in the record supports the factual findings and whether the Commissioner applied the correct legal standards.  *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007); *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001); 42 U.S.C. § 405(g).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" but it must be "more than a scintilla," although it need not be a preponderance.  *Lax*, 489 F.3d at 1084 (citations and internal quotation marks omitted).  While the courts "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," they neither reweigh the evidence nor substitute their judgment for the Commissioner's.  *Id.* (citation and internal quotation marks

---

[30]Tr. at 19.

[31]Tr. at 20.

[32]Tr. at 21.

omitted).  But they also do not accept "the findings of the Commissioner" mechanically or affirm those findings "by isolating facts and labeling them substantial evidence, as the court[s] must scrutinize the entire record in determining whether the Commissioner's conclusions are rational." *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1167 (D. Kan. 2012).  When determining whether substantial evidence supports the Commissioner's decision, the courts "examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision." *Id.*  "Evidence is not substantial if it is overwhelmed by other evidence, particularly certain types of evidence (e.g., that offered by treating physicians) or if it really constitutes not evidence but mere conclusion." *Lawton v. Barnhart*, 121 F. App'x 364, 366 (10th Cir. 2005) (quoting *Frey v. Bowen,* 816 F.2d 508, 512 (10th Cir. 1987)).

A "failure to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis." *Brown ex rel. Brown v. Comm'r of Soc. Sec.*, 311 F. Supp. 2d 1151, 1155 (D. Kan. 2004) (citing *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994)).  But such a failure justifies reversal only in "appropriate circumstances" – applying an improper legal standard does not require reversal in all cases.  *Glass*, 43 F.3d at 1395; *accord Lee v. Colvin*, No. 12-2259-SAC, 2013 WL 4549211, at *5 (D. Kan. Aug. 28, 2013) (discussing the general rule set out in *Glass*).  Some errors are harmless and require no remand or further consideration.  *See*, *e.g.*, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161-63 (10th Cir. 2012); *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004); *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

**B.  Disability Determination**

Claimants seeking social security disability benefits carry the burden to show that they

are disabled.  *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009).  In general,[33] the Social

Security Act defines "disability" as "the inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Commissioner follows "a five-step sequential evaluation process to determine disa-

bility."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (discussing 20 C.F.R. § 404.1520 (govern-

ing claims for disability insurance benefits) and § 416.920 (governing claims for supplemental

security income)).  As summarized by the Tenth Circuit, this familiar five-step process is as

follows:

> Step one requires the agency to determine whether a claimant is "presently
> engaged in substantial gainful activity."  If not, the agency proceeds to consider,
> at step two, whether a claimant has "a medically severe impairment or
> impairments." . . . At step three, the ALJ considers whether a claimant's
> medically severe impairments are equivalent to a condition "listed in the appendix
> of the relevant disability regulation."  If a claimant's impairments are not
> equivalent to a listed impairment, the ALJ must consider, at step four, whether a
> claimant's impairments prevent [him or] her from performing [his or] her past
> relevant work.  Even if a claimant is so impaired, the agency considers, at step
> five, whether [he or] she possesses the sufficient residual functional capability to
> perform other work in the national economy.

*Wall*, 561 F.3d at 1052 (citations omitted); *accord* 20 C.F.R. § 404.1520(b)-(g).  The claimant

has the "burden of proof on the first four steps," but the burden shifts to the Commissioner "at

step five to show that claimant retained the RFC to 'perform an alternative work activity and that

this specific type of job exists in the national economy.'"  *Smith v. Barnhart*, 61 F. App'x 647,

648 (10th Cir. 2003) (quoting *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).  This

---

[33]The definition differs for minors and some blind individuals.  *See* 42 U.S.C. §§ 423(d)(1)(B) (definition for some blind individuals); 1382c(a)(3)(C)(i) (definition for individuals "under the age of 18").

analysis terminates if the Commissioner determines at any point that the claimant is or is not disabled. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

## V.  ISSUES FOR REVIEW

Plaintiff claims that substantial evidence does not support the ALJ's decision because (1) his RFC and hypothetical question to the VE did not specify the frequency of plaintiff's need for positional alternation, *i.e.*, a sit/stand option and (2) the ALJ failed to mention opinions from plaintiff's wife and sister that support his claim for disability.

## A.  Sit/Stand Option

For testimony of a vocational expert to constitute substantial evidence to support an ALJ's decision, the ALJ must formulate and ask hypothetical questions that "include a full description of [the] claimant's impairments." *McKitrick v. Barnhart*, 364 F. Supp. 2d 1272, 1287 (D. Kan. 2005).  ALJs must "accept and include in the hypothetical question only those limitations supported by the record." *McDonald v. Barnhart*, 358 F. Supp. 2d 1034, 1042 (D. Kan. 2005) (citing *Shepherd v. Apfel*, 184 F.3d 1196, 1203 (10th Cir. 1999)).  And when ALJs find "that a claimant cannot perform the full range of  work in a particular exertional category," they must describe particularly and precisely the additional limitations in their written decisions and hypotheticals to the VE.  *Vail v. Barnhart*, 84 F. App'x 1, 4-5 (10th Cir. 2003).

When the ALJ determines that the claimant has an RFC for less than a full range of sedentary work, the ALJ's "RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing."  Policy Interpretation Ruling Titles II & XVI:  Determining Capability to do Other Work – Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work, SSR 96-9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996).

Although SSR 96-9p does not apply when the ALJ has found the claimant "retains the capacity to perform less than the full range of *light work*," *Vititoe v. Colvin*, 549 F. App'x 723, 731 (10th Cir. 2013) (emphasis in original), the Tenth Circuit has recognized that "[p]recisely how long a claimant can sit without a change in position is also relevant to assumptions whether he can perform light work." *Vail*, 84 F. App'x at 5 (citing 20 C.F.R. § 404.1567(b) (defining light work)). And decisions from the District of Kansas "clearly and consistently" indicate "that the RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing when plaintiff is limited to light or sedentary work." *Verstraete v. Astrue*, No. 11-1404-SAC, 2013 WL 238193, at *5 (D. Kan. Jan. 22, 2013) (listing nine district court cases).

Requiring specificity about "the frequency of the claimant's need to alternate sitting and standing" when the ALJ has found the claimant unable to perform the full range of light work is consistent with SSR 83-12. *Id.* In addressing the special situation when a claimant has a need to alternate between standing and sitting, SSR 83-12 states:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)
>
> There are some jobs in the national economy – typically professional and managerial ones – in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of [transferring] work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person

11

cannot ordinarily sit or stand at will.  In cases of unusual limitation of ability to sit or stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base.

Program Policy Statement Titles II & XVI:  Capability to do Other Work – The Medical-Vocational Rules as a Framework for Evaluating Exertional Limitations Within a Range of Work or Between Ranges of Work, SSR 83-12 (PPS-103), 1983 WL 31253, at *4 (S.S.A. 1983).

An ALJ does not comply with the specificity requirements about a sit/stand limitation by using vague phrases such as, "[C]laimant would have to change positions from time to time to relieve his symptomatology." *Armer v. Apfel*, 216 F.3d 1086, 2000 WL 743680, at *3 (10th Cir. June 9, 2000) (unpublished table decision).  And ALJs make "critical omissions" when they fail to define how often the claimant "would need to change positions even 'as needed.'" *Vail v. Barnhart*, 84 F. App'x 1, 5 (10th Cir. 2003).  Moreover, a sit/stand option that includes no specific details about the frequency of any need the claimant "may have to alternate sitting and standing and the length of time needed to stand" is not specific enough to be a reliable basis to analyze the erosion of the occupational base or the total number of jobs that the claimant can perform.  *Maynard v. Astrue*, 276 F. App'x 726, 731 (10th Cir. 2007).  While these unpublished decisions are not binding, *see* 10th Cir. R. 32.1, the Court finds them persuasive as Rule 32.1 permits.

The Court likewise finds other cases relying on these Tenth Circuit cases persuasive. *See*, *e.g.*, *Verstraete*, 2013 WL 238193, at *5; *Allen v. Astrue*, No. 09-1271-SAC, 2010 WL 2925169, at *6-7 (D. Kan. July 21, 2010); *Trulove v. Astrue*, No. 08-1020-MLB, 2008 WL 4683044, at *7-8 (D. Kan. Oct. 22, 2008) (accepting recommendation of Mag. J.); *Fairbanks v. Astrue*, No. 06-1206-MLB, 2007 WL 2176029, at *34 (D. Kan. June 12, 2007) (accepting

recommendation of Mag. J.).  As noted in *Maynard*, a generic sit/stand option in the hypothetical questioning of the VE does not suffice.  276 F. App'x at  731.  Nor is an unspecified "need to alternate sitting and standing" sufficient.  *Fairbanks*, 2007 WL 2176029, at *4.  But questioning of a VE is sufficiently specific when the ALJ includes an "'at will' or 'as needed' requirement" to the sit/stand limitation.  *Buchheit v. Astrue*, No. 11-1405-SAC, 2012 WL 6159460, at *4 & n.1 (D. Kan. Dec. 11, 2012); *accord Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 792 (10th Cir. 2013) (recognizing that hypothetical questioning is sufficiently specific when the questioning states that the sit/stand limitation is "at will"); *Vail*, 84 F. App'x at 5 (mentioning "as needed"); *Fisher v. Astrue*, No. 09-4116-RDR, 2012 WL 405497, at *8 (D. Kan. Feb. 7, 2012) (distinguishing *Maynard* on grounds that "the ALJ was more specific in setting forth the frequency of the need to alternate sitting and standing when he asked the vocational expert whether there were jobs in which plaintiff could sit or stand 'at will'").

Here, the ALJ found that plaintiff "requires a sit/stand option" without specifying the parameters of that limitation.  *See* Tr. at 16.  And without more elaboration, the ALJ included the limitation in his hypothetical question to the VE.  Tr. at 59.  Based upon *Armer*, *Vail*, *Maynard*, and the numerous consistent decisions of this Court that have found them persuasive, the Court finds that the ALJ erred when he merely asked the VE whether a "sit/stand option" – without any specifics – would affect the jobs identified as available in the national and local economies. Without sufficient specificity about the frequency of the need to alternate between sitting and standing, the VE's answer does not constitute substantial evidence to support the ALJ's decision.

The Commissioner concedes that the ALJ did not expressly include "as needed" or "at will" in the hypothetical question to the VE.  Comm'r Br. at 8.  But she contends that such modi-

13

fiers are implicit in the sit/stand option stated by the ALJ. *Id.* As the Commissioner points out, the argument finds some support in *Robertson v. Barnhart*, 02-2381-JWL, 2003 WL 21254771 (D. Kan. May 28, 2003); *Williams v. Barnhart*, 140 F. App'x 932, 937 (11th Cir. 2005); and *Buckner-Larkin v. Astrue*, 450 F. App'x 626, 627 (9th Cir. 2011). *See* Comm'r Br. at 8-9. None of these decisions are binding on this Court. *Robertson*, moreover, only briefly considered the issue, did not mention *Armer*, and it predates both *Maynard* and *Vail*. And the Court knows of just one case that has cited *Robertson* in the eleven years since it was decided. *See Barnes v. Astrue*, No. 1:09-CV-553, 2011 WL 6371005, at *4 (M.D.N.C. Dec. 20, 2011) (recommendation of Mag. J.), *adopted*, 2012 WL 601845 (M.D.N.C. Feb. 23, 2012). Moreover, under *Maynard*, a generic sit/stand option is simply not specific enough. *See* 276 F. App'x at 731. For all these reasons, the Court finds the more recent Tenth Circuit and District of Kansas cases more persuasive on this point.

The Commissioner also asserts that *Talamantes v. Astrue*, 370 F. App'x 955, 959 (10th Cir. 2010) supports the ALJ's decision. Comm'r Br. at 9. In *Talamantes*, the court addressed an alleged error that "the ALJ's hypotheticals did not 'relate with precision' all of the impairments included in his RFC." 370 F. App'x at 959. The court found harmless any discrepancy "between 'the opportunity to alternate positions between sitting and standing,' as stated in a hypothetical to the VE, and the 'ability to alternate positions as needed,' as described in the RFC." *Id.* But the claimant in *Talamantes* did not frame the decisive issue as one turning on an imprecise hypothetical about the frequency of the sit/stand limitation. Instead, the *Talamantes* court focused on the distinction between the RFC terminology – as stated by the ALJ – and the wording of the hypothetical question presented to the VE. *Talamantes* did not address the

implications of *Maynard* or a deficiency about the specificity of the sit/stand limitation.  In these circumstances, the Court finds *Maynard* more on point and persuasive than *Talamantes*.  And in this case, furthermore, the problem is not one about consistency; it is, instead, that neither the RFC nor the VE questioning used the phrase "as needed" or "at will."

The Commissioner urges the Court to distinguish *Armer* and *Vail* on grounds that they involved vague limitations – such as "a need to change positions 'from time to time'" or "brief changes of position" – instead of "a sit/stand 'option,' which allows a claimant to change posi-tions as needed."  Comm'r Br. at 9.  For the reasons already stated, the Court disagrees that a generic sit/stand option is distinguishable from the limitations at issue in *Armer* and *Vail*.  Like those vague limitations, a generic sit/stand option is not sufficiently specific.

The Court also recognizes that other district courts have found *Armer* and *Vail* disting-uishable on grounds that *Armer* involved sedentary work and *Vail* involved more than just an error in specificity about the frequency of the claimant's sit/stand limitation.  *See Campbell v. Colvin*, No. 1:11-CV-327, 2014 WL 2815781, at *5 (M.D.N.C. June 23, 2014); *Bailey v. Colvin*, No. 1:10-CV-626, 2013 WL 3864403, at *11 (M.D.N.C. July 24, 2013) (recommendation of Mag. J.), *adopted*, 2013 WL 5212825 (M.D.N.C. Sept. 16, 2013); *Vallejo v. Astrue*, No. 3:10-CV-445-GCM, 2011 WL 4595259, at *10 (W.D.N.C. Aug. 4, 2011) (recommendation of Mag. J.), *accepted*, 2011 WL 4597348 (W.D.N.C. Sept. 30, 2011).  But as recognized in numerous decisions by this Court, ALJs must provide some specificity when describing the frequency of a claimant's need to alternate between sitting and standing whether the limitation relates to the claimant's ability for light or sedentary work.  *See Verstraete*, 2013 WL 238193, at *5 (listing cases).  Social Security Ruling 83-12 and the regulatory definition for "light work" found in §

15

404.1567(b) provide a sound basis to apply a specificity requirement like the one identified in *Armer* in the light work context.  And that *Vail* involved other reasons to reverse the decision of the ALJ does not mean that the specificity failure alone was insufficient for reversal.

Finally, the Commissioner urges the Court to distinguish *Maynard* on grounds that, in addition to having vague hypothetical questioning, the ALJ committed other errors, *i.e.*, relying on medical-vocational grids despite evidence that the claimant was unable to perform a full range of sedentary work and relying on a VE who had mistakenly identified a job as sedentary when it should have been characterized as light work.  Comm'r Br. at 10.  These additional errors do not change the fact that the *Maynard* court specifically and explicitly found a generic sit/stand option insufficient.  Absent a contrary binding opinion or a more persuasive, non-binding decision, *Maynard* and the other decisions relied upon in this Memorandum and Order provide persuasive authority to guide the Court's decision.

For all of these reasons, the Court concludes that the ALJ erred in formulating an adequately specific hypothetical that includes the frequency of plaintiff's need to alternate between sitting and standing.  Accordingly, the testimony from the VE does not constitute substantial evidence to support the denial of benefits at step 5.  The Court thus reverses the decision of the Commissioner on this basis and remands the case for further consideration about plaintiff's need to alternate between sitting and standing.  On remand, the ALJ shall make "an RFC assessment which is specific as to the frequency of plaintiff's need to alternate sitting and standing" and include such specificity in hypothetical questioning of the vocational expert.  *See Verstraete*, 2013 WL 238193, at *5.

**B.  <u>Other Source Opinions</u>**

Plaintiff also contends that the ALJ erred by failing to mention the opinions of his wife and sister that support his disability claim.  Pl.'s Br. at 5-6.  On December 16, 2010, his wife completed a third-party function report.  Tr. at 233-40 (Ex. 13E).  She provided information about plaintiff's daily activities and abilities.  Tr. at 233-39.  Among other things, she checked sixteen of nineteen abilities impacted by his condition:  lifting, hearing, squatting, completing tasks, bending, standing, reaching, walking, sitting, kneeling, stair climbing, using hands, memory, concentration, following instructions, and understanding.  Tr. at 238.  She also stated that he could only walk "from the bedroom to the living room" before needing to stop and rest.  *Id.*

On October 16, 2011, plaintiff's wife submitted a testimonial letter to the social security administration.  Tr. at 261-63 (Ex. 19E).  She stated that "several times each week," plaintiff "gets very depressed to where all he is able to do is stay in bed all day."  Tr. at 261.  She also stated:  "Most days, [plaintiff] lies in bed so that the back pain is minimal.  Sometimes even lying in bed does not help his back."  *Id.*  And at times she would ask plaintiff's sister to sit with plaintiff so that the sister can complete housework.  Tr. at 262.

On that same date, plaintiff's sister likewise submitted a testimonial on his behalf.  Tr. at 264 (Ex. 20E).  She confirmed that she helps plaintiff when his wife is working.  *Id.*  And she also stated:  "Most of the time, [plaintiff] has to be in bed because his back hurts too bad to sit on the couch or stand for any amount of time."  *Id.*

In addition to evidence from acceptable medical sources, such as licensed physicians and psychologists, the Commissioner "may also use evidence from other sources to show the severity of [a claimant's] impairment(s) and how it affects [his or her] ability to work."  20 C.F.R. § 404.1513(d).  Spouses and siblings fall within the broad range of "other sources" that may pro-

vide such evidence.  *See* Titles II & XVI:  Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernment Agencies, SSR 06-03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006) [hereinafter SSR 06-03p].  In 2006, the Social Security Administration issued SSR 06-03p to clarify how ALJs "consider opinions and other evidence . . . from 'non-medical sources,'" including spouses and other relatives.  *Id.* at *4.

Although "'other sources' cannot establish the existence of a medically determinable impairment," which requires "evidence from an 'acceptable medical source,'" other sources "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  *Id.* at *2.  And, while the regulations "do not explicitly address how to consider relevant opinions and other evidence from 'other sources,'" such opinions and evidence "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."  *Id.* at *3.  By requiring ALJs to consider other factors brought to their attention, the regulations require consideration of evidence and opinions from other sources.  *Id.* at *4 (citing 20 C.F.R. §§ 404.1527, 416.927).  When

> considering evidence from "non-medical sources" who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends, and neighbors, it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence.

*Id.* at *6.

In this case, the ALJ did not mention the wife or sister by name or relationship but he did specifically discuss Exhibit 13E, *see* Tr. at 17, which is the wife's third-party function report.  Thus, he undoubtedly considered that report.  But nothing reflects that he considered the testi-

monials submitted by the wife and sister other than the general statements that the ALJ considered all the evidence.  The parties disagree whether such general statements are adequate to convey that the ALJ considered the testimonials.  And on a more basic level, they disagree whether his failure to discuss them requires remand.

While conceding that "explicit discussion of those statements by the ALJ would be better," the Commissioner contends that remand is unnecessary when undiscussed statements are largely cumulative of the plaintiff's allegations and the ALJ has stated that he considered all the evidence.  Comm'r Br. at 3-4 (citing *Brescia v. Astrue*, 287 F. App'x 626, 630-31 (10th Cir. 2008)).  In the unpublished *Brescia* decision, the Tenth Circuit reiterated its "general practice . . . to take a lower tribunal at its word when it declares that it has considered a matter."  287 F. App'x at 631 (quoting *Hackett v. Barnhart,* 395 F.3d 1168, 1173 (10th Cir. 2005)).

Plaintiff, on the other hand, argues that *Blea v. Barnhart*, 466 F.3d 903, 914-15 (10th Cir. 2006) overrides this general rule.  Reply at 2.  He contends that remand is necessary when the ALJ has ignored witness statements.  *Id.*  He also contends that the error is not harmless because the testimonials corroborate the severity and intensity of plaintiff's allegations of depression and pain. *Id.* at 3.

In *Blea*, the Tenth Circuit emphasized that ALJs are "not required to make specific written findings of credibility only if 'the written decision reflects that the ALJ considered the testimony.'"  466 F.3d at 915 (quoting *Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996)).  It also reasserted that ALJs generally must discuss "the evidence supporting his decision, . . . the uncontroverted evidence he chooses not to rely upon, [and the] significantly probative evidence he rejects." *Id.* (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)).  This decision is

consistent with the general practice set out in *Hackett*.

In *Hackett*, the Tenth Circuit took the Appeals Council at its word that it considered additional evidence submitted to it. *See* 395 F.3d at 1172-73. Whereas in *Blea*, the Tenth Circuit addressed "the ALJ's failure to *discuss or consider* the lay testimony of [the claimant's] wife." 466 F.3d at 914 (emphasis added). There is a distinction between what the ALJ must consider versus what he must discuss. *See Clifton*, 79 F.3d at 1009-10 ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). While an ALJ need not discuss every piece of evidence, the ALJ still must discuss the evidence identified in *Clifton* and *Blea*. *See id.* at 1010; *Blea*, 466 F.3d at 914-15. SSR 06-03p highlights this distinction:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. *Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision*, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

2006 WL 2329939, at *6 (emphasis added).

When "it is not at all 'clear that the ALJ considered [certain evidence] in making his decision,'" the failure to discuss uncontroverted evidence not relied upon or significantly probative evidence that the ALJ rejected "requires remand for the ALJ to incorporate [the evidence] into his decision." *Blea*, 466 F.3d at 915. But when considered yet undiscussed evidence is "largely cumulative" of the claimant's testimony, remand is not required. *Brescia*, 287 F.

App'x at 630.

Given the general practice in *Hackett*, it appears that the ALJ considered the undiscussed testimonials from plaintiff's wife and sister. Consequently, *Blea* does not require the Court to remand this case for the ALJ to incorporate such evidence into his decision. And while remand may be unnecessary under *Brescia* when that evidence is largely cumulative of the plaintiff's testimony, the ALJ is in the best position to make that determination when the Court is already remanding the case for other reasons.[34] Because the Court is remanding this action based upon the sit/stand option issue and the Commissioner recognizes that an explicit discussion of the statements from the wife and sister would be better, the Court directs the ALJ, on remand, to discuss the third-party evidence from plaintiff's wife and sister.

## VI. CONCLUSION

For the reasons explained above, the Court directs the Clerk to enter judgment in accordance with the fourth sentence of 42 U.S.C. § 405(g) reversing the Commissioner's decision and remanding the case for further proceedings consistent with this order.

**IT IS SO ORDERED.**

**Dated in Topeka, Kansas on this 1st day of August, 2014.**


**S/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

---

[34]Plaintiff also relies on *Kitzman v. Astrue*, No. 11-2513-EFM, 2013 WL 4482927 (D. Kan. Aug. 20, 2013) to support an alternative argument that remand is necessary because the undiscussed third-party evidence is corroborative. Reply at 3. *Kitzman*, however, is distinguishable from this case and *Brescia* because the ALJ in *Kitzman* did not consider the evidence at all. And because the Court is remanding this case for other reasons, there is no reason to decide whether there is a legitimate basis to distinguish between evidence that is "corroborative" versus "largely cumulative" when the ALJ has stated that he considered all evidence.

21